Howard L. BURPO, Appellant,

v.

CHESAPEAKE & OHIO RAILWAY COMPANY, Appellee.

No. 13683.

United States Court of Appeals Sixth Circuit.

May 14, 1959.

B. William Heidkamp, Cincinnati, Ohio, for appellant.

Porter M. Gray, Ashland, Ky. (Gray & Woods, Ashland, Ky., Hobson & Stephens, Pikeville, Ky., on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and O'SULLIVAN, District Judge.

PER CURIAM.

Plaintiff appeals from judgment for defendant in an action under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. The case was tried, without a jury, before Honorable Mac Swinford, District Judge. The trial judge made Findings of Fact that the defendant railroad was not guilty of neg-

ligence and that the plaintiff's claimed disabilities were not caused by the incident upon which he relied for his claimed cause of action.

Plaintiff had, for many years, worked as an engineer for the defendant railroad company. He had suffered from chronic bronchitis for several years prior to the incident which is the basis of his claim. This occurred on July 2, 1954. He had had medical attention and been hospitalized several times prior to July 2, 1954. While operating his engine, prior to that date, his bronchial condition had been exposed to, and aggravated by, two occurrences in which he had been overcome by fumes and smoke. His bronchial condition was getting progressively worse up to July 2, 1954. On that date he was exposed to the fumes of a weed killer spray device attached to the front end of a train of cars which were being pushed by the engine then operated by plaintiff. He claimed to have immediately developed a dermatitis, followed by an aggravation of his bronchial condition, and that at the time of his retirement from the railroad in June, 1955, he was totally incapacitated thereby.

For many years prior to July 2, 1954, railroads in the United States sprayed their rights of way with a chemical solution for the purpose of retarding the development of weeds. The spray was a mixture of a chemical and water. The spray car involved here had what were called spray rods on each side of its front end. These rods were about twenty to twenty-four inches above the ground. The engine operated by plaintiff was at the rear end of a train of cars, an estimated three hundred to three hundred and fifty feet from the spray rods. Plaintiff had never before worked in such an operation, and on the day in question was engaged in it for about an hour and a half. During the course of it he smelled the fumes from the spray. No unusual action of the spray was involved, but plaintiff said that some of the fumes were carried to his position at the window of the engine cab by the wind and the movement of the train.

After being relieved of duty that day, he went on a vacation which had already been planned for that time. He thereafter developed dermatitis, which resulted in a reddening of his skin with swelling of his lips and eyes, and some burning sensation and other discomfort. While on vacation, he consulted a doctor and was given some medication to relieve the skin irritation. This condition improved and he returned to work following the week of vacation. The dermatitis apparently was all cleared up within a few weeks. He thereafter continued to work at his regular employment until his retirement in June, 1955, following which he began to draw his retirement pay. He was then 65 years of age. His employment between the date of the spray incident and his retirement was interrupted for one period of time when he was disabled due to a knee injury.

Defendant's witness, Bargerhuff, an official of the company providing the spray equipment, testified that within his knowledge there had never been any case of dermatitis or other disability to any railroad employees consequent upon being exposed, as plaintiff was, to the fumes from a spray device. The identical chemical used on the spray equipment in question had been in use by defendant railroad for approximately five years and similar sprays were used by other railroads over a longer number of years. It was testified that it had been used on some forty different railroads. No other employee of the defendant had been in any way affected by it. There was no evidence of any respiratory or other trouble consequent to any employee of any railroad which used spray solution of the same general nature as that used by the defendant. There was evidence that various workmen had been exposed to direct contact with the chemical used in solution by the defendant railroad, without injurious effect; this was before such chemical was combined in a solution containing ninety percent water. Plaintiff offered no evidence that the spray solution was dangerous to members of train crews carrying on the operation:

nor was there evidence that persons with pre-existing respiratory trouble would be likely to be injuriously affected by exposure to such spray. There was, however, opinion evidence by a doctor produced by plaintiff, that plaintiff's dermatitis was caused by the spray and that such exposure may have had a part in aggravating plaintiff's respiratory troubles.

Plaintiff, prior to the incident in question, had on several occasions reported to a hospital for treatment of his bronchial condition and in such instances, he had to get a pass from a superior to be admitted to the hospital. It was his claim that even though in ordinary use the spray may not have been injurious to health, the railroad was charged with knowledge of plaintiff's condition of bronchitis and, therefore, was negligent in exposing him to the spray.

The trial judge found, as a matter of fact, that the defendant railroad was not negligent in using the spray or in directing plaintiff to operate the engine on the day in question. He also found, as a fact, that the plaintiff's condition of disability was not the consequence of the incident relied upon.

Plaintiff's brief states the question involved as follows:

"In a cause arising under the Federal Employers' Liability Act (Title 45, Section 21 [51] et seq.), where an employer-railroad knows that an employee-engineer has had a series of bronchial and pulmonary episodes for several years prior to the date that he was ordered to take out a 'weed spraying' train, is it negligence on the part of the railroad company to order said employee-engineer to proceed with said weed spraying operation without providing some safeguard so that the engineer-employee would be protected from any harmful effects resulting from exposure to said spray and fumes?"

He charges that the trial court was in error in finding that the railroad was not negligent. The defendant states the questions involved as follows:

"Did the appellee provide appellant with a safe place in which to perform his work?"

"Were the disabilities of which the appellant complained brought about or accentuated by the chemicals used in the spraying of the right-of-way of the railroad?"

We do not consider it necessary to reach the question of connection between the plaintiff's exposure to the spray and his disability. We are satisfied that, as trier of the facts, the trial court's finding that there was no negligence on the part of the railroad was not clearly erroneous.

■ Plaintiff relies upon several cases where a reviewing court was considering the question of whether or not a particular factual situation required a claim of negligence to be submitted to a jury. These cases are not applicable here. This Court is limited on this review to determining whether or not the trial judge's Finding of Fact in such regard was "clearly erroneous".

"* * * findings of fact shall not be set aside unless clearly erroneous * * *." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ From a review of the entire record, we are not persuaded that the judge's finding of no negligence was clearly erroneous. Therefore, we are not at liberty to set aside his finding, which was solely one of fact. The controlling rule was stated in this circuit by Judge Simons, as follows:

"The question being solely one of fact, even were we in disagreement, which clearly we are not, we should be required to accept its findings unless clearly erroneous, and we are unable to perceive error."

Blytheville Cotton Oil Co. v. Kurn, 6 Cir., 155 F.2d 467, 470. Judgment of the lower court is affirmed.